484 N.W.2d 77 (1992)
240 Neb. 690
In re Interest of N.M. and J.M., Children Under 18 Years of Age.
STATE of Nebraska, Appellee and Cross-Appellee,
v.
R.M., Appellant, and J.M., Appellee and Cross-Appellant.
No. S-91-217.
Supreme Court of Nebraska.
May 15, 1992.
*78 Ann E. Ebsen, Omaha, for appellant.
Milo Alexander, Omaha, for appellee J.M.
James S. Jansen, Douglas County Atty., Elizabeth G. Crnkovich, Omaha, and Donald C. Hosford, Jr., guardian ad litem, for appellee State.
HASTINGS, C.J., and BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.
*79 PER CURIAM.
The natural parents of Nicole, born March 3, 1982, and James, born October 1, 1984, appeal from an order of the separate juvenile court of Douglas County terminating their rights to their two minor children. The mother and father each timely appealed. The father filed his notice of appeal after the mother's filing and is therefore designated an appellee. The father has no dispute with the mother's appeal, but only with the juvenile court's termination of his parental rights.
The mother, R.M., contends that the juvenile court erred (1) "in finding that clear and convincing evidence established that [the mother] had failed to comply with reasonable efforts ... to correct conditions leading to the determination" that the children were minors within Neb.Rev.Stat. § 43-247(3)(a) (Reissue 1988); (2) "in finding that the rehabilitative plan ... was fundamentally fair and reasonable and designed as a reasonable effort to correct the conditions" leading to the determination; and (3) "in failing to determine the best interests of the children." The father, J.M., assigns the same errors in regard to the termination of his rights, and additionally contends that the court erred (1) "in finding that the repeated admission of evidence of sexual abuse and the imposition of a plan requiring therapy for sexual abuse, despite the dismissal of all allegations of sexual abuse at the adjudication stage, did not constitute a denial of fundamental fairness and due process," and (2) in overruling the father's objection to the request for judicial notice of the court's own records.
For the reasons hereinafter stated, we reverse the judgment and remand the cause for further proceedings as to James, and reverse and dismiss the cause as to Nicole.

I.
The issue of jurisdiction is not raised by the parents, but, following the holding in In re Interest of D.M.B., 240 Neb. 349, 481 N.W.2d 905 (1992), we determine the juvenile court did not obtain jurisdiction over Nicole.
The record before us shows, in that regard, as follows: The children were removed from their parents' home on December 15, 1986, when the mother brought James to the hospital with severe cuts and bruises to his head and face. The children were apparently placed in foster care at this point.
On January 14, 1987, an amended petition was filed in the juvenile court. That petition alleged, in part:

COUNT I
[Nicole] was born March 3, 1982; [James] was born October 1, 1984; and said children are now living or to be found in Douglas County, Nebraska.

COUNT II
[Nicole] and [James] come within the meaning of Nebraska Revised Statutes, 1943, Section 43-247(3)(a), being under the age of eighteen years, and lacking proper parental care by reason of the faults or habits of [J.M., their father] and [R.M., their mother], natural parents of said children, in that:
A. On or about December 15, 1986, [James] sustained numerous lacerations and bruises to the head and face while in the care and custody of [J.M.].
B. [J.M.] and [R.M.] have given conflicting explanations as to the cause of these injuries; medical personnel indicate the injuries are not consistent with those explanations.
C. [Nicole] has been subjected to fondling of the genitals and oral sex by [J.M.] on at least three occasions in the past year.
An adjudication hearing was held on March 16, 1987. The father and the mother, each with separate counsel; an appointed guardian ad litem for the children; and a deputy county attorney were present. The county attorney told the court that the parents were "willing to admit to certain portions of the petition that I filed." The parents each then admitted count I and paragraphs A and B of count II, as set out *80 above. Leave was granted to the county attorney to strike paragraph C of count II.
The juvenile court found that Nicole and James were children within the meaning of § 43-247(3)(a) insofar as their parents, J.M. and R.M., are concerned. A written order filed the next day found that "Paragraph A and B of Count II are true" and that "the minor children are children within the meaning of Section 43-247(3a)...." It should be noted that the parents admitted only count I and paragraphs A and B of count II. The court found only that count I and paragraphs A and B of count II were true and that the children were within § 43-247(3)(a), without stating how the children were within that section. Thus, the only admissions made by the parents were not specifically addressed to the general provisions of the statutes concerning children who lack "parental care by reason of the fault or habits of [their parents]." The parents actually admitted very little.
The adjudication order contained no specific factual findings, although Neb.Rev.Stat. § 43-279.01(2) (Reissue 1988) provides:
After giving the parties the information prescribed in subsection (1) of this section, the court may accept an in-court admission ... from any parent or custodian as to all or any part of the allegations in the petition. The court shall ascertain a factual basis for an admission or an answer of no contest.
Insofar as Nicole is concerned, in the state of the pleadings, it would have been difficult to "ascertain a factual basis" for the parents' admissions.
In any event, we are faced with an adjudication order finding jurisdiction over Nicole, when there are no factual allegations, no evidence at the adjudication hearing, and no findings concerning the actions of either the father or the mother as to the child Nicole. Insofar as Nicole is concerned, we are acting in a void. In In re Interest of D.M.B., 240 Neb. at 352, 481 N.W.2d at 909, we held:
If the pleadings and evidence at the adjudication hearing do not justify a juvenile court acquiring jurisdiction of a child, then the juvenile court has no jurisdiction, i.e., no power, to order a parent to comply with a rehabilitation plan, nor does the juvenile court have any power over the parent or child at the disposition hearing unless jurisdiction is alleged and proven by new facts at a new adjudication-disposition hearing.
We hold the juvenile court had no jurisdiction over Nicole and that therefore this court has no jurisdiction either.
The cause as to Nicole is remanded to the juvenile court with directions to dismiss. It can be hoped the matter concerning Nicole may be refiled to obtain a determination whether the specific allegations concerning Nicole, as set out in the amended petition before dismissal of paragraph C, are correct. It should be noted that the amended petition, as filed, contains no factual allegations concerning the mother as to Nicole.

II.
As to the order concerning James, we determine that the cause, in that respect, must be remanded for further proceedings.
As to the jurisdiction issue, the allegations concerning James, when most broadly construed, set out a basis for juvenile court jurisdiction. As in the case of Nicole, no "factual basis" for the parents' admission was ascertained. The facts admitted at adjudication were that on December 15, 1986, James "sustained numerous lacerations and bruises to the head and face while in the care and custody of [J.M.]" and that J.M. and R.M. gave explanations of those injuries which were not consistent with the injuries. We note that at the disposition hearing, on April 28, 1987, a report was submitted, without objection, setting out that J.M. had " `bucked' foreheads with James as he had been mad and frustrated with the child playing with the television wires." J.M. was sentenced to county jail for 6 months for assault and battery in connection with this incident and was serving that sentence at the time of the disposition hearing. As stated in the father's reply brief at 3, "The adjudication *81 was based on Mr. [M.'s] admitted physical abuse of James." The juvenile court had jurisdiction over James inasmuch as his father had physically abused him.
Similarly, when broadly construed, the allegations of the petition can be determined to set out facts contending that the mother was not properly parenting James because she was not protecting James against his father.
We determine, however, that both the mother and the father have been deprived of due process in the course of the proceedings concerning James, and we remand the cause as to that child for further proceedings.
First of all, we note that at the adjudication hearing of March 16, 1987, before accepting the parents' admissions, the court advised the parents that they had the right to a trial, at which trial the State would have to prove the charges made against them by a preponderance of the evidence; the right to cross-examine witnesses; the right to testify or not testify; and the right to call witnesses. The parents were advised of these rights in compliance with § 43-279.01(1), which statute requires that the court inform the parties of various rights before the court "may accept an incourt admission ... as to all or any part of the allegations in the petition."
We note that the record before us makes no mention, as required by § 43-279.01(1)(a) and (b), of certain other rights as to which the parents must be advised, to wit:
(a) Nature of the proceedings and the possible consequences or dispositions pursuant to sections 43-284 [provisions for care and custody of juveniles under § 43-247(3) ], 43-285 [placement reports], and 43-288 to 43-295 [orders as to juveniles, including care and treatment, and possible termination of parental rights];
(b) Right to engage counsel of their choice at their own expense or to have counsel appointed if unable to afford to hire a lawyer.
We do not base our decision in this case on the grounds that the record does not show full compliance with § 43-279.01, because the point is not raised by the parents in this case, and possibly, appropriate information was furnished to the parties at the detention hearing, which is not in the record before us. The question of counsel must have been addressed earlier because, at the adjudication hearing, each parent was represented by counsel, apparently appointed at an earlier time.
It is clear, however, that adequate notice of the possibility of the termination of parental rights must be given in adjudication hearings before the juvenile court may accept an in-court admission, an answer of no contest, or a denial from a parent as to all or any part of the allegations of the petition before the juvenile court.
The crux of the lack of due process to the father is the fact that he has been deprived of his right to counsel for an appreciable part of the proceedings concerning James. It is true that the father precipitated the withdrawal of his first appointed counsel, as shown by the motion to withdraw and affidavit of J.M.'s first attorney, filed July 8, 1987, and by J.M.'s letter to the court dated June 23, 1987. In his letter J.M. requests "a new Public Defender." The lawyer who withdrew requested that substitute counsel be appointed. J.M.'s complaints about that lawyer were to the effect that J.M. and that lawyer did not get along generally. We note that such a reason does not, of itself, require the appointment of different counsel. State v. Reddick, 230 Neb. 218, 430 N.W.2d 542 (1988). A hearing was held on July 16, 1987, on the motion to withdraw. Both parents were present, as well as their attorneys, the guardian ad litem for the children, an employee of the Department of Social Services, and a probation officer. On July 17, 1987, the court entered an order permitting the attorney to withdraw. Nothing in the order stated the father was to proceed pro se, nor was a different attorney appointed for the father.
On July 5, 1988, an "Entry of Appearance" was filed. This document stated, in its entirety, "COMES NOW Joseph Lopez Wilson and, pursuant to the Order of *82 Appointment dated January 23, 1987 by this Court, hereby enters his appearance on behalf of [J.M.], the natural father of the minor children herein." The facts set out in the entry of appearance cannot be correct. In March 1987, the original attorney was representing the father, and that representation continued until that attorney was permitted to withdraw on July 17, 1987. In any event, the record shows that the father did not have counsel between July 17, 1987, and July 5, 1988. During that time, three review hearings were held. We hold that a parent in a juvenile court case has the right to appointed counsel if unable to hire a lawyer. § 43-279.01(1)(b).
The review hearing held on October 28, 1987, presented particularly damaging evidence as to the father. Both parents were present at this review hearing. The mother's lawyer was present, but the father appeared without counsel. A report submitted at this review hearing, without objection from J.M. or R.M.'s attorney, stated in part, "[Nicole] has stated to me that her father ... had seriously sexually abused [Nicole] several times. [Nicole] has also stated to me that her mother ... had molested her brother [James]. However, Nicole's main worry appears to be [J.M.'s] violence to Nicole and to [James]."
This same report contained a three-page addendum, described as "[Nicole] in session with [family therapist] Martha Skrocky 8-26-87." This addendum consisted of questions by the therapist and answers of Nicole. Specific sexual abuse by the father on Nicole was described by Nicole. Nicole also described specific sexual abuse of James by the mother. The record does not show if the author of the report was available for cross-examination, but the record does show that no cross-examination was conducted, and no testimony as to the report was offered. On January 5, 1987, the same information had been given by Nicole to a police officer, Nicole's foster parents, and a Child Protective Services worker, and was set out in a report of another Child Protective Services worker received in evidence at the disposition hearing. The case, from a pleading point of view, however, proceeded as a case involving physical abuse as to James only. It cannot be said that the absence of counsel for J.M. did not affect J.M.'s due process right.
J.M. also assigns as error the actions of the trial court "in overruling Cross-Appellant [J.M.'s] Amended Objection to Request for Judicial Notice." This issue stems from the motion for termination of parental rights, where paragraph III states: "That movant requests the Court to take judicial notice of its own records, exhibits and orders in this case under consideration."
First of all, the concept of judicial notice has no place in the request made by the State. Rule 201(2) of the Nebraska Evidence Rules, Neb.Rev.Stat. § 27-201(2) (Reissue 1989), states: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (a) generally known within the territorial jurisdiction of the trial court or (b) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."
The evidence which the State requests the trial court to judicially notice is not in any way within the definitions set out above. The reports as to sexual abuse contain alleged facts and conclusions to which neither of the parents has ever agreed. Both have denied any sexual abuse of the children in question. There has not been a judicial finding involving these disputed allegations. The parents' denial, of course, does not mean the allegations are false, but that those allegations must be proved. A trial court cannot take judicial notice of disputed allegations. It appears that what the State means is that it wants the court to consider reports earlier adduced and treat them as established fact. That is not judicial notice and is not right.
State v. Norwood, 203 Neb. 201, 277 N.W.2d 709 (1979), should not be read to hold to the contrary. In Norwood we stated at 204-05, 277 N.W.2d at 711:
The court properly took into consideration all of its earlier proceedings. The matter before the juvenile court was a continuation of the same proceeding. A *83 court must take judicial notice of its own records in the case under consideration. Solomon v. A.W. Farney, Inc., 136 Neb. 338, 286 N.W. 254. It also has a right to examine its own records and take judicial notice of its own proceedings and judgment in an interwoven and dependent controversy where the same matters have already been considered and determined.
Norwood determined that the hearing on the motion to terminate parental rights "was a continuation of the same proceeding." Id. at 204, 277 N.W.2d at 711. Obviously a court in a 10-day trial in a case other than a juvenile case must consider the evidence adduced on the first day. That is not "judicial notice," but a consideration of evidence before a court.
Similarly, Norwood held that a court should judicially notice "its own proceedings and judgment ... where the same matters have already been considered and determined." (Emphasis supplied.) 203 Neb. at 204-05, 277 N.W.2d at 711. Such judicial notice by a court is far different from being asked to judicially notice controverted facts, as in this case.
The trial court stated it took "judicial notice of the previous proceedings, including the Exhibits and the testimony and the orders, et cetera." The authors of the various reports were not shown to be available for cross-examination at the time of the hearing on the motion to terminate, and as to the exhibits introduced while J.M. was without counsel or not present or both, the authors of those exhibits should have been available for cross-examination by J.M., if they were to be received in evidence. In re Interest of P.D., 231 Neb. 608, 437 N.W.2d 156 (1989); In re Interest of J.S., A.C., and C.S., 227 Neb. 251, 417 N.W.2d 147 (1987).
As an additional reason that the court should not have considered all of the prior reports as fact through the guise of "judicial notice," it is not possible to determine what "facts" the court judicially noticed and relied on in reaching the decision it did. See In re Interest of C.K., L.K., and G.K., 240 Neb. 700, 484 N.W.2d 68 (1992).
With regard to the due process afforded to the mother, the same analysis applies. There were many reports which may have been "judicially noticed" by the court and considered as fact by the court, when the authors of those reports were not shown to be available for cross-examination. Many of those "facts" could be damaging to the mother's case.
Considering the state of the record before us, we hold that the order terminating the parental rights of both the mother and the father as to James must be set aside. The judgment is reversed and the cause remanded for further proceedings in accord with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
GRANT, Justice, concurring in part, and in part dissenting.
I agree fully with everything the majority sets out in part II, that is, the issue concerning James.
I dissent from the determination that the juvenile court had no jurisdiction over Nicole, as set out in part I. An injured child, James, was before the court. His parents had no rational explanation for his injuries. James' sister was also before the court with the same parents. Both children are entitled to be safe. I think the juvenile court had jurisdiction, which is the power to decide the case, even if that decision is incorrect. I believe, however, the court deprived the parents of their rights to due process in an even greater degree than with regard to James, because no factual determinations were ever made as to Nicole.
I agree that the order of the juvenile court terminating the rights of the parents as to James should be reversed, and the cause remanded for further proceedings. I would also reverse the order of the juvenile court terminating the rights of the parents as to Nicole, and remand the cause for further proceedings as to Nicole also.
HASTINGS, C.J., and BOSLAUGH, J., join in this concurrence and dissent.