773 N.W.2d 161 (2009)
17 Neb. App. 919
In re INTEREST OF JOSIAH T., a child under 18 years of age.
State of Nebraska, Appellee,
v.
Sonia M., Appellant.
No. A-08-1214.
Court of Appeals of Nebraska.
September 8, 2009.
*163 Mark Porto, of Shamberg, Wolf, McDermott & Depue, Grand Island, for appellant.
Robert J. Cashoili, Deputy Hall County Attorney, for appellee.
IRWIN, CARLSON, and MOORE, Judges.
IRWIN, Judge.

I. INTRODUCTION
Sonia M. appeals from the order of the Hall County Court, sitting as a juvenile court, which terminated her parental rights to her son, Josiah T. On appeal, *164 Sonia challenges the county court's finding that her parental rights should be terminated pursuant to Neb.Rev.Stat. § 43-292(1) and (2) (Reissue 2008) and the court's finding that termination of her parental rights is in Josiah's best interests. Upon our de novo review of the record, we find that the State failed to adduce sufficient evidence to clearly and convincingly demonstrate that termination of Sonia's parental rights is warranted pursuant to § 43-292(1) or (2), and accordingly, we reverse, and remand for further proceedings.

II. BACKGROUND
These proceedings involve Josiah, born in 2006. Although Josiah's father's and Sonia's parental rights were terminated during the same proceedings, Josiah's father does not appeal from the court's decision to terminate his parental rights. As such, the termination of Josiah's father's parental rights is not a subject of this appeal.
In January 2008, Josiah was removed from Sonia's home and placed in the custody of the Department of Health and Human Services (DHHS) after Sonia was arrested by federal authorities. On January 4, 2008, the State filed a petition alleging that Josiah was a child within the meaning of Neb.Rev.Stat. § 43-247(3)(a) (Cum. Supp. 2006) through the fault or habits of Sonia.
On May 13, 2008, an adjudication hearing was held. The judge's notes from this hearing indicate that Sonia failed to appear. The notes also indicate that Josiah was adjudicated on the allegations in the State's petition.
On August 5, 2008, the State filed a motion for termination of Sonia's parental rights. In the motion, the State alleged that Josiah was a child within the meaning of § 43-292(1) and (2).
On October 17, 2008, a termination of parental rights hearing was held. At the hearing, the State called only one witness to testify in support of the termination of Sonia's parental rights. Judy Pfeifer, the DHHS child protection specialist assigned to the case, testified that Sonia's parental rights to Josiah should be terminated.
Pfeifer testified that Josiah has been in the continuous custody of DHHS since January 2008, when Sonia was arrested. Pfeifer testified that since January 2008, she has had some contact with Sonia. Specifically, Pfeifer testified that Sonia has telephoned to request pictures of Josiah. Pfeifer indicated that Sonia did not request visitation with Josiah.
Pfeifer testified that Sonia recently had been convicted of distribution and possession of illegal drugs and that Sonia informed her that she had been sentenced to 12 to 15 years' imprisonment. Pfeifer opined that terminating Sonia's parental rights was in Josiah's best interests, because he "doesn't remember" Sonia and he "deserves permanency." Pfeifer "recommend[ed] that this little boy be able to get on with his life."
Sonia did not appear at the termination hearing. However, after the State rested, Sonia's counsel offered into evidence a letter authored by Sonia. In the letter, Sonia stated that she did not want her parental rights terminated. Sonia indicated that she wanted visitation with Josiah and contact with Josiah's foster parents. Sonia also stated that she was "not going to do 12 [years]." She wrote, "At the most I might do 4 [years]. But at the least is 2 ½ [years]."
At the close of the evidence, the county court immediately rendered its decision from the bench. The court terminated Sonia's parental rights to Josiah. The court found "by clear and convincing evidence *165 that [Sonia] abandoned [Josiah] for six months or more immediately prior to the filing of the motion to terminate parental rights." The court also found that Sonia had "substantially and continuously or repeatedly neglected [Josiah] and refused to give him necessary parental care and protection." Finally, the court found that "it would be in the best interests of [Josiah] that the parental rights of [Sonia] be terminated."
Sonia timely appeals from the county court's decision to terminate her parental rights.

III. ASSIGNMENTS OF ERROR
On appeal, Sonia challenges the county court's finding that her parental rights should be terminated pursuant to § 43-292(1) and (2) and the court's finding that termination of her parental rights is in Josiah's best interests.

IV. ANALYSIS

1. STANDARD OF REVIEW
Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. In re Interest of Jagger L., 270 Neb. 828, 708 N.W.2d 802 (2006). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. Id.
For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that termination is in the child's best interests. See id. The State must prove these facts by clear and convincing evidence. Id. Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proven. Id.

2. STATUTORY GROUNDS FOR TERMINATION
In Sonia's first assignment of error, she alleges that the county court erred in finding that the State presented clear and convincing evidence to prove the statutory grounds for termination of her parental rights. Specifically, she challenges the county court's determination that termination of her parental rights was warranted pursuant to § 43-292(1) and (2). Upon our de novo review of the record, we determine that the evidence does not clearly and convincingly establish that Sonia abandoned or neglected Josiah pursuant to § 43-292(1) and (2).

(a) § 43-292(1)
Section 43-292(1) provides that the court may terminate parental rights when the parent has "abandoned the juvenile for six months or more immediately prior to the filing of the petition" to terminate parental rights. "Abandonment," for the purpose of § 43-292(1), is a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and the opportunity for the display of parental affection for the child. In re Interest of L.V., 240 Neb. 404, 482 N.W.2d 250 (1992). The question of abandonment is largely one of intent, to be determined in each case from all of the facts and circumstances. Id.
To prove abandonment, the evidence must clearly and convincingly show that the parent has acted toward the child in a manner evidencing a settled purpose to be rid of all parental obligations and to forgo all parental rights, together with a complete repudiation of parenthood and an abandonment of parental rights and responsibilities. *166 In re Interest of B.A.G., 235 Neb. 730, 457 N.W.2d 292 (1990).
It is clear from the record that Sonia has not had contact with Josiah for over 6 months. Josiah was removed from Sonia's home in January 2008 and has remained in the custody of DHHS since that time. As such, at the time of the termination hearing on October 17, 2008, Josiah had been in the custody of DHHS for approximately 9 months. There is no dispute that Sonia had not had any contact with Josiah during these 9 months.
Although Sonia has not had any contact with Josiah in approximately 9 months, this evidence does not, by itself, prove abandonment. As we discussed above, a showing of abandonment requires more than an extended absence in a child's life. A finding of abandonment requires a settled purpose to be rid of all parental obligations and to forgo all parental rights, together with a complete repudiation of parenthood and an abandonment of parental rights and responsibilities. See In re Interest of B.A.G., supra.
Upon our de novo review of the record, we find that the State has failed to prove by clear and convincing evidence that Sonia possessed a settled purpose to be rid of all of her parental obligations or to forgo all of her parental rights.
The State's evidence at the termination hearing consisted of approximately eight pages of testimony from Pfeifer, the DHHS child protection specialist responsible for managing Josiah's case. In fact, much of Pfeifer's testimony related to terminating the parental rights of Josiah's father. Approximately two pages of testimony focused on terminating Sonia's parental rights.
The majority of the two pages of testimony concerned Sonia's criminal conviction and sentence. Pfeifer testified that Sonia had been convicted of "[distribution and possession of illegal drugs" and was serving a 12- to 15-year sentence in Leavenworth, Kansas. Pfeifer indicated that Sonia informed Pfeifer of her sentence during a recent telephone conversation.
The Nebraska Supreme Court has held that parental incarceration may be considered in reference to abandonment as a basis for termination of parental rights. In re Interest of L.V., 240 Neb. 404, 482 N.W.2d 250 (1992). However, the court has also indicated that
"[i]ncarceration of a parent, standing alone, does not furnish a ground for automatic termination of parental rights.... Incarceration, however, does not insulate an inmate from the termination of his parental rights if the record contains the clear and convincing evidence that would support the termination of the rights of any other parent."
Id. at 418, 482 N.W.2d at 259-60 (quoting In re Randy Scott B., 511 A.2d 450 (Me. 1986)).
Here, the State's case centered on Sonia's criminal conviction and sentence and her inability to care for Josiah while she was incarcerated. Pfeifer testified that Sonia would be incarcerated for 12 to 15 years and that Josiah deserved to gain permanency during this time.
Despite the State's reliance on Sonia's incarceration as the sole basis for terminating her parental rights, the State failed to present any concrete evidence concerning Sonia's sentence or expected release date. Rather, Pfeifer testified that her knowledge of Sonia's sentence came from Sonia. Sonia indicated in her letter that Pfeifer was incorrect about the length of her sentence and wrote that she may be released in approximately 2½ years. Given the lack of evidence concerning essential details of Sonia's sentence, we cannot *167 say that the length of Sonia's incarceration, by itself, warrants termination of her parental rights pursuant to § 43-292(1).
Furthermore, the State failed to present any other evidence to demonstrate that Sonia had abandoned Josiah pursuant to § 43-292(1). Pfeifer testified that during the 9 months that Sonia was away from Josiah, Sonia kept in contact with her by telephone. Pfeifer testified that Sonia did request pictures of Josiah, but did not request visitation with him. It is not clear from the record whether Sonia would have been able to exercise any visitation with Josiah while she was incarcerated. This limited evidence does not clearly and convincingly demonstrate that Sonia possessed a settled purpose to be rid of all of her parental obligations or to forgo all of her parental rights.
Additionally, in Sonia's letter, she explicitly stated that she wanted to continue to be a part of Josiah's life. Specifically, Sonia indicated that she did not want her parental rights terminated. She explained that she would like to have visitation with Josiah and contact with Josiah's foster parents. Sonia indicated that she would like to be involved in any decision about a future placement for Josiah. Sonia indicated that she wanted Josiah to be placed with a family member.
Upon our de novo review of all of the evidence presented at the termination hearing, we find that the State failed to present clear and convincing evidence that Sonia abandoned Josiah pursuant to § 43-292(1). Evidence of Sonia's incarceration, without more, does not provide clear and convincing evidence of abandonment.

(b) § 43-292(2)
Section 43-292(2) provides that the court may terminate parental rights when the parent has "substantially and continuously or repeatedly neglected and refused to give the juvenile ... necessary parental care and protection." While a parent's incarceration, standing alone, does not provide grounds for termination of parental rights, a parent's incarceration may be considered along with other factors in determining whether parental rights can be terminated based on neglect. In re Interest of Kalie W., 258 Neb. 46, 601 N.W.2d 753 (1999). The Nebraska Supreme Court has recognized that in termination of parental rights cases, it is proper to consider a parent's inability to perform his or her parental obligations because of imprisonment, the nature of the crime committed, as well as the person against whom the criminal act was perpetrated. Id. See, also, In re Interest of L.V., 240 Neb. 404, 482 N.W.2d 250 (1992).
In this case, the State's evidence centered on Sonia's drug-related conviction and sentence. However, the State did not present concrete evidence to demonstrate the exact circumstances of Sonia's arrest, conviction, or sentence. There is nothing in the record to indicate exactly what crime Sonia was convicted of, and there is conflicting evidence concerning the length of Sonia's sentence. Pfeifer testified that Sonia was convicted of "[d]istribution and possession of illegal drugs." We do not have any further information about Sonia's conviction. And, although Pfeifer testified that Sonia informed her that she would be incarcerated for 12 to 15 years, Sonia indicated that she would be incarcerated for only 2½ to 4 years.
We can infer that Sonia will be unable to provide for most of Josiah's needs as long as she is incarcerated. However, we cannot say with any precision how long Sonia will be away from Josiah.
The State offered no other evidence at the termination hearing to prove Sonia has neglected Josiah pursuant to § 43-292(2). In its brief to this court, the State argues *168 that Sonia has shown a pattern of drug abuse and incarceration and that such a pattern demonstrates neglect. In support of its argument, the State refers to an exhibit admitted into evidence at a previous disposition hearing, but not at the termination hearing. Upon our review of the record, we conclude that because this exhibit was not marked, offered, or received into evidence at the termination hearing, it was not properly made a part of the record and should not be considered in a determination of whether Sonia's parental rights should be terminated. Exhibit 5 is a case report authored by Colette Evans, the DHHS child protection specialist managing Josiah's case in July 2008. Evans did not appear at the termination hearing. In the report, Evans indicates that Sonia had been previously incarcerated for a drug-related offense immediately prior to and at the time of Josiah's birth. This report was admitted into evidence at an August 5, 2008, disposition hearing. The transcription of this hearing and the accompanying exhibit is included in our record.
At the termination hearing, the State offered into evidence two exhibits. Although these were the first exhibits offered at the termination hearing, the court continued its numbering system from previous hearings and the exhibits were marked as exhibits 6 and 7. Exhibits 6 and 7 demonstrate that the State gave notice of the termination hearing to both Sonia and Josiah's father. The State did not reoffer the case plan admitted at the disposition hearing into evidence, nor did the State ask the court to judicially notice that document or any evidence presented at previous hearings. It is not clear from the record whether the county court considered this evidence in terminating Sonia's parental rights; however, because this exhibit was not marked, offered, or received into evidence at the termination hearing, it was not properly made a part of the record and we do not consider it in our analysis.
We digress briefly to discuss the proper manner for offering into evidence an exhibit admitted at a previous hearing. A trial court may take judicial notice of its own proceedings and judgment where the same matters have already been considered and determined. See In re Interest of N.M. and J.M., 240 Neb. 690, 484 N.W.2d 77 (1992). However, a trial court cannot take judicial notice of disputed allegations. Id.
The Nebraska Supreme Court has indicated that evidence from a prior hearing may be judicially noticed. The court has provided the following guidelines for offering such evidence:
"Papers requested to be noticed must be marked, identified, and made a part of the record. Testimony must be transcribed, properly certified, marked and made a part of the record. Trial court's ruling in the termination proceeding should state and describe what it is the court is judicially noticing. Otherwise, a meaningful review is impossible."
In re Interest of C.K., L.K., and G.K., 240 Neb. 700, 709, 484 N.W.2d 68, 73 (1992). Accord In re Interest of Tabitha J., 5 Neb.App. 609, 561 N.W.2d 252 (1997).
As such, the State must do more than include evidence from a prior hearing in the appellate record. Rather, the State must mark and identify the evidence and make the evidence a part of the record at the trial court level.
Because exhibit 5 was not properly received into evidence at the termination hearing, there was nothing presented at the termination hearing to demonstrate that Sonia was previously incarcerated or that she had a history of drug problems. *169 In fact, we note that Pfeifer testified that she had no knowledge that Sonia had any previous involvement with DHHS, which testimony indicates Pfeifer's lack of knowledge about Sonia's previous incarceration at the time of Josiah's birth.
We conclude that evidence of Sonia's present incarceration, without more, does not provide clear and convincing evidence of neglect.
Upon our de novo review of the record, we find that the State failed to adduce sufficient evidence to clearly and convincingly demonstrate that termination of Sonia's parental rights is warranted pursuant to § 43-292(1) or (2). Because the State failed to prove that one or more of the statutory grounds listed in § 43-292 have been satisfied, we conclude that the county court erred in terminating Sonia's parental rights. Accordingly, we reverse, and remand for further proceedings.

3. BEST INTERESTS
Sonia also alleges that the county court erred in determining that termination of her parental rights is in Josiah's best interests. However, because we conclude that the State failed to provide sufficient evidence to prove that termination of Sonia's parental rights was warranted pursuant to § 43-292(1) or (2) and remand for further proceedings, we do not address Sonia's second assignment of error. An appellate court is not obligated to engage in an analysis which is not necessary to adjudicate the case and controversy before it. Curtis v. Curtis, 17 Neb.App. 230, 759 N.W.2d 269 (2008).

V. CONCLUSION
Upon our de novo review of the record, we find that the State failed to adduce sufficient evidence to clearly and convincingly demonstrate that termination of Sonia's parental rights is warranted pursuant to § 43-292(1) or (2). As such, the county court erred in terminating Sonia's parental rights and we reverse, and remand for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
CARLSON, Judge, concurs.