Finally, Hernandez argues that his pleas were not voluntary and intelligent, due to trial counsel's ineffectiveness during the plea bargaining process. Because we have found that trial counsel was not ineffective in the plea bargaining process, this argument is also without merit.

### CONCLUSION

The district court did not err in finding that Hernandez was not deprived of his right to effective assistance of counsel in the plea bargaining process. Thus, we affirm the denial of Hernandez' motion for postconviction relief.

AFFIRMED.

---

In re Interest of Gabriella H., a child
under 18 years of age.
State of Nebraska, appellee,
v. Ricardo R., appellant.

___ N.W.2d ___

Filed June 3, 2014.    No. A-13-900.

1. **Juvenile Courts: Appeal and Error.** Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings.

2. **Evidence: Appeal and Error.** When the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other.

3. **Parental Rights: Proof.** For a juvenile court to terminate parental rights under Neb. Rev. Stat. § 43-292 (Cum. Supp. 2012), it must find clear and convincing evidence that one or more of the statutory grounds listed in that section have been satisfied and that termination is in the child's best interests.

4. **Evidence: Words and Phrases.** Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved.

5. **Parental Rights: Time: Abandonment.** Neb Rev. Stat. § 43-292(1) (Cum. Supp. 2012) provides grounds for termination of parental rights when a parent has abandoned the juvenile for 6 months or more immediately prior to the filing of the petition for termination.

6. ____: ____: ____. The crucial time period for purposes of determining whether a parent has intentionally abandoned a child under Neb. Rev. Stat. § 43-292(1) (Cum. Supp. 2012) is determined by counting back 6 months from the date the petition was filed.

7. **Parental Rights: Abandonment: Words and Phrases.** For purposes of Neb. Rev. Stat. § 43-292(1) (Cum. Supp. 2012), "abandonment" is a parent's intentional withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and the opportunity for the display of parental affection for the child.

8. ____: ____: ____. "Just cause or excuse" for a parent's failure to maintain a relationship with a minor child has generally been confined to circumstances that are, at least in part, beyond the control of the parent.

9. **Parental Rights: Abandonment: Proof.** To prove abandonment in determining whether parental rights should be terminated, the evidence must clearly and convincingly show that the parent has acted toward the child in a manner evidencing a settled purpose to be rid of all parental obligations and to forgo all parental rights, together with a complete repudiation of parenthood and an abandonment of parental rights and responsibilities.

10. **Parental Rights: Abandonment: Intent: Proof.** Whether a parent has abandoned a child within the meaning of Neb. Rev. Stat. § 43-292(1) (Cum. Supp. 2012) is a question of fact and depends upon parental intent, which may be determined by circumstantial evidence.

11. **Parental Rights: Abandonment: Evidence: Intent.** A finding of abandonment must be based on evidence of the parent's intent to withhold parental care and maintenance, not on the parent's actual failure to provide such care and maintenance as a result of impediments which are not attributable to the parent.

12. **Appeal and Error.** An appellate court is not obligated to engage in an analysis which is not necessary to adjudicate the case and controversy before it.

Appeal from the County Court for Colfax County: Patrick R. McDermott, Judge. Reversed and remanded for further proceedings.

Jerod L. Trouba, of Knoepfle & Trouba, P.C., for appellant.

Leslie J. Buhl, Deputy Colfax County Attorney, for appellee.

Jacqueline M. Tessendorf, of Tessendorf & Tessendorf, P.C., guardian ad litem.

Irwin, Riedmann, and Bishop, Judges.

Riedmann, Judge.

## INTRODUCTION

Ricardo R. appeals the order of the Colfax County Court, sitting as a juvenile court, terminating his parental rights to his minor child, Gabriella H. Ricardo asserts the juvenile court erred in finding that he intentionally abandoned Gabriella under Neb. Rev. Stat. § 43-292(1) (Cum. Supp. 2012), that

reasonable efforts at reunification were not required pursuant to Neb. Rev. Stat. § 43-283.01(4)(a) (Cum. Supp. 2012), and that termination was in Gabriella's best interests. Upon our de novo review of the record, we find that the juvenile court erred in terminating Ricardo's parental rights, because the State failed to adduce clear and convincing evidence of abandonment under § 43-292(1). Thus, we reverse, and remand for further proceedings.

## BACKGROUND

Gabriella, born in November 2011, is the biological child of Dorothy G. Gabriella was immediately removed from Dorothy's care due to Dorothy's substance abuse and placed in the temporary custody of the Department of Health and Human Services (DHHS).

On November 28, 2011, the State filed a petition seeking to adjudicate Gabriella under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008), because she lacked proper parental care by reason of the fault or habits of her mother, Dorothy. The petition listed the father of Gabriella as "[u]nknown." An initial hearing on the petition was held on December 6, during which Dorothy advised the court that Ricardo was a potential father of Gabriella. The court ordered DHHS to determine the paternity of the child. Gabriella's caseworker attempted to contact Ricardo to conduct genetic testing, but was unable to reach him.

On December 12, 2011, the State filed an amended petition for adjudication, which again listed the father of Gabriella as "[u]nknown." An adjudication hearing was held on December 13 during which Dorothy admitted the allegations in the amended petition. The court accepted Dorothy's admission and found that Gabriella was a child within § 43-247(3)(a). DHHS continued its attempts to contact Ricardo on a monthly basis from December 2011 until September 2012, via telephone numbers provided by Dorothy. The caseworker left messages for Ricardo, but he never returned her calls. However, Ricardo does not speak English, and there is no evidence that he received the caseworker's messages.

In July 2012, Ricardo was arrested on an unrelated criminal charge, and he remained incarcerated awaiting trial throughout the pendency of this case. The State filed a motion for paternity testing, upon which a DNA sample was collected from Ricardo. The DNA test results were issued on November 12, establishing a 99.997-percent probability that Ricardo was Gabriella's biological father. On November 20, the court recognized Ricardo as Gabriella's biological father and appointed counsel to represent him.

Dorothy voluntarily relinquished her parental rights to Gabriella on January 31, 2013, and an order was entered in April terminating her parental rights. On May 3, the State filed a supplemental petition for adjudication of Gabriella and termination of Ricardo's parental rights. The supplemental petition alleged that Ricardo had abandoned Gabriella for 6 months or more immediately prior to the filing of the petition and that termination of Ricardo's parental rights was in Gabriella's best interests. The State filed an amended supplemental petition on June 18 which added allegations against Gabriella's legal father (Dorothy's husband) but made no changes to the allegations against Ricardo. Ricardo appeared at the hearing on the amended supplemental petition and denied the allegations. A termination hearing was held on July 30 during which evidence was adduced regarding Ricardo's alleged abandonment of Gabriella.

Dorothy testified at the termination hearing on behalf of the State. Dorothy discovered she was pregnant with Gabriella in late February 2011. Although she was married to another man at the time, they were separated and she was in a relationship with Ricardo, as well as a third man. Dorothy told Ricardo that she was pregnant and that she thought he was the child's father, although she could not be 100-percent sure. She told Ricardo that there was one other man that could also be the child's father. According to Dorothy, Ricardo said he would "be there."

Ricardo was not present during Gabriella's birth and is not listed as the father on her birth certificate. However, he was approved to be present during Dorothy's supervised visits with

Gabriella, because Dorothy had identified him as a potential father for Gabriella. Ricardo attended four of Dorothy's visits with Gabriella in late 2011 and early 2012. Dorothy referred to Ricardo as Gabriella's "dad" during the visits. Ricardo did not attend any further visits after February 2, 2012, and never requested his own visitation with Gabriella.

Once paternity was established by DNA testing in November 2012, the caseworker sent a letter to Ricardo at the detention center where he was incarcerated. The letter informed Ricardo that he was Gabriella's father and that he could contact the caseworker regarding Gabriella. The caseworker did not receive any contact from Ricardo or his attorney after sending notification of his paternity. In fact, Ricardo has never made contact with DHHS, the caseworker, or the foster parents to inquire about Gabriella at any time during this case; nor has he ever provided monetary support, cards, or gifts for Gabriella.

The caseworker testified that she did not believe permanency for Gabriella could be achieved with Ricardo, because he is incarcerated for an undetermined amount of time and Gabriella does not know him. Gabriella has been with her foster parents since she was 3 days old, and they are willing and able to provide permanency for her if Ricardo's parental rights are terminated. Gabriella is doing very well in the care of her foster parents, and they are the only family she has ever known. The caseworker testified that Gabriella is in need of permanency and that termination of Ricardo's parental rights would be in Gabriella's best interests.

The court found clear and convincing evidence that Ricardo had abandoned Gabriella for 6 months or more immediately prior to the filing of the petition to terminate and that reasonable efforts at reunification were not required due to Ricardo's abandonment of Gabriella. The court further found that termination of Ricardo's parental rights was in Gabriella's best interests. Ricardo timely appeals.

## ASSIGNMENTS OF ERROR

Ricardo asserts the juvenile court erred in finding that (1) Ricardo intentionally abandoned Gabriella for 6 months or

more immediately prior to the filing of the petition to terminate his parental rights, (2) reasonable efforts at reunification were not required under § 43-283.01(4)(a) due to Ricardo's abandonment of Gabriella, and (3) termination of Ricardo's parental rights was in Gabriella's best interests.

## STANDARD OF REVIEW

[1,2] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

Ricardo first asserts that the juvenile court erred in finding that he intentionally abandoned Gabriella for 6 months or more immediately prior to the filing of the petition to terminate his parental rights. We agree.

[3,4] For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in that section have been satisfied and that termination is in the child's best interests. *In re Interest of Jacob H. et al.*, 20 Neb. App. 680, 831 N.W.2d 347 (2013). The State must prove these facts by clear and convincing evidence. *Id.* Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved. *Id.*

*Calculating Period*
*of Abandonment.*

[5,6] Section 43-292(1) provides grounds for termination of parental rights when a parent has "abandoned the juvenile for six months or more immediately prior to the filing of the petition." The crucial time period for purposes of determining whether a parent has intentionally abandoned a child under § 43-292(1) is determined by counting back 6 months from the

date the petition was filed. *In re Interest of Dylan Z.*, 13 Neb. App. 586, 697 N.W.2d 707 (2005).

The State asserts that the crucial time period is the 6 months prior to the filing of the amended supplemental petition on June 18, 2013. We conclude, however, that the crucial time period is the 6 months prior to the filing of the supplemental petition on May 3, wherein the State first alleged that Ricardo had abandoned Gabriella for 6 months or more. The amended supplemental petition filed on June 18 merely added allegations against Gabriella's legal father and did not alter the allegations against Ricardo. See *id.* (utilizing 6-month period for abandonment from filing date of supplemental petition alleging abandonment, rather than filing date of amended supplemental petition which alleged additional statutory ground for termination but did not change abandonment allegation). Thus, the crucial time period for determining whether Ricardo has intentionally abandoned Gabriella is November 3, 2012, to May 3, 2013.

*Defining Abandonment.*

[7,8] For purposes of § 43-292(1), "abandonment" is a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and the opportunity for the display of parental affection for the child. *In re Interest of Chance J.*, 279 Neb. 81, 776 N.W.2d 519 (2009). "'[J]ust cause or excuse'" for a parent's failure to maintain a relationship with a minor child has generally been confined to circumstances that are, at least in part, beyond the control of the parent. *Id.* at 91, 776 N.W.2d at 527.

[9,10] To prove abandonment, the evidence must clearly and convincingly show that the parent has acted toward the child in a manner evidencing a settled purpose to be rid of all parental obligations and to forgo all parental rights, together with a complete repudiation of parenthood and an abandonment of parental rights and responsibilities. *Id.* Whether a parent has abandoned a child within the meaning of § 43-292(1) is a question of fact and depends upon parental intent, which

may be determined by circumstantial evidence. *In re Interest of Chance J., supra.*

[11] The record before us clearly shows that Ricardo had no contact with Gabriella during the relevant 6-month time period from November 3, 2012, to May 3, 2013. There is no dispute that Ricardo has never provided monetary support for Gabriella, nor ever sent any cards, gifts, or letters to Gabriella. In other words, the evidence shows a complete abandonment of all parental rights and responsibilities. To sustain a finding of abandonment, however, such a finding must be based on evidence of the parent's *intent* to withhold parental care and maintenance, not on the parent's actual failure to provide such care and maintenance as a result of impediments which are not attributable to the parent. See *In re Interest of Dylan Z., supra.* Ricardo argues that he did not have the requisite intent to abandon Gabriella, due to his lack of knowledge that he was Gabriella's father.

We have previously held that in an out-of-wedlock situation, where a father's lack of contact with his child is directly attributable to his lack of knowledge that he is the child's father, the evidence is insufficient to establish that the abandonment was intentional. *In re Interest of Dylan Z.*, 13 Neb. App. 586, 697 N.W.2d 707 (2005). But see *In re Interest of Chance J., supra* (holding that husband's belief that he was not father of his wife's child, based upon child's physical appearance and husband's suspicion of wife's infidelity, was *not* just cause or excuse for abandoning child that was born into wedlock).

Here, although Ricardo knew there was a possibility that he was Gabriella's father, the DNA test results did not confirm this until November 12, 2012, which was during the relevant 6-month time period. The evidence shows that Dorothy was married to another man at the time of Gabriella's conception and birth and that Dorothy had three prior children with two different men, all of which facts Ricardo knew at the time. Although Dorothy told Ricardo that she thought he was the child's father, she told him she could not be 100-percent sure,

as she was involved in a relationship with both Ricardo and another man at the time Gabriella was conceived.

Ricardo was not present during Gabriella's birth, and he is not listed as the father on Gabriella's birth certificate. While he did attend four of Dorothy's supervised visits with Gabriella shortly after her birth, that alone is not enough to clearly and convincingly establish that Ricardo knew or believed that he was Gabriella's father. Absent such knowledge or belief, Ricardo could not possess the requisite intent to abandon Gabriella under § 43-292(1). Thus, we conclude that the evidence is insufficient as a matter of law to establish that Ricardo intentionally abandoned Gabriella under § 43-292(1), because he did not know he was Gabriella's father until he was notified of the DNA test results in late November 2012, which was during the 6-month period immediately prior to the filing of the supplemental petition.

Furthermore, we find that even if Ricardo had known that he was Gabriella's father for the entire 6-month period, his incarceration was a circumstance out of his control which impeded his ability to parent Gabriella and, thus, precludes a finding of intentional abandonment. The Nebraska Supreme Court has acknowledged that while the fact of incarceration is involuntary, the illegal activities leading to incarceration are voluntary. *In re Interest of R.T. and R.T.*, 233 Neb. 483, 446 N.W.2d 12 (1989). See, also, *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). However, in those cases, the parent was incarcerated following a conviction. Ricardo was incarcerated awaiting trial. Under our justice system, he was presumed innocent at that time and had not been found guilty of any crime.

The State argues that even after being notified that he was Gabriella's biological father, Ricardo did nothing to indicate that he had any intention to parent Gabriella, thereby confirming his intent to abandon her. However, Ricardo's incarceration began on July 30, 2012, well before his paternity was established, and he remained incarcerated throughout the pendency of this case. The caseworker testified that she had no personal contact with him during the pendency of the case. The record does not disclose any showing by DHHS that it

had given Ricardo any information which would have allowed him to contact Gabriella. Although the caseworker testified she "attempted to send" Ricardo a letter after she received the paternity test results, the letter is not in evidence, and she testified it advised him that he was Gabriella's biological father and that "if he wanted to make contact with [the caseworker] he should." The monthly calls that she made to telephone numbers provided by Dorothy were made before the 6-month period prior to the filing of the supplemental petition and prior to the establishment of paternity.

Furthermore, there is nothing in the record to show what Ricardo could have done to parent Gabriella while he was incarcerated. While it is true that Ricardo never requested visitation with Gabriella, the State presented no evidence that visitation would have been permitted at the detention center where Ricardo was incarcerated. See *In re Interest of Josiah T.*, 17 Neb. App. 919, 773 N.W.2d 161 (2009). Aside from visitation, it would have been very difficult, if not impossible, for Ricardo to develop a relationship with Gabriella while he was incarcerated, given that she was too young to understand or participate in cards, letters, or telephone calls. There is no evidence that Ricardo had the means to offer any monetary support for Gabriella while he was incarcerated. Based upon this record, we cannot find that Ricardo demonstrated an intention to withhold parental care and maintenance from Gabriella, particularly when there is no evidence that his incarceration was attributable to any wrongdoing on his part.

We are mindful that "'"[i]ncarceration . . . does not insulate an inmate from the termination of . . . parental rights if the record contains the clear and convincing evidence that would support the termination of the rights of any other parent."'" *Id.* at 925, 773 N.W.2d at 166. Here, however, the record lacks clear and convincing evidence of Ricardo's intent to abandon Gabriella and, thus, does not support termination. Accordingly, we conclude that the juvenile court erred in terminating Ricardo's parental rights under § 43-292(1) and in finding that reasonable efforts at reunification were not required pursuant to § 43-283.01(4)(a).

[12] Because we have found that the juvenile court erred in terminating Ricardo's parental rights, we do not address whether termination was in Gabriella's best interests. An appellate court is not obligated to engage in an analysis which is not necessary to adjudicate the case and controversy before it. *In re Interest of Josiah T., supra*.

## CONCLUSION

Upon our de novo review of the record, we conclude that the juvenile court erred in terminating Ricardo's parental rights to Gabriella because the State failed to adduce clear and convincing evidence of abandonment under § 43-292(1). Accordingly, we reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.