In re Interest of Zanaya W. et al.,
children under 18 years of age.
State of Nebraska, appellee and cross-appellee, v.
P'lar'e S., appellee and cross-appellant,
and Reon W., intervenor-appellant.

In re Interest of Jahon S., a child
under 18 years of age.
State of Nebraska, appellee, v.
P'lar'e S., appellant.

___ N.W.2d ___

Filed June 5, 2015.    Nos. S-14-550, S-14-564.

1. **Juvenile Courts: Evidence: Appeal and Error.** Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other.
2. **Parental Rights.** Incarceration may be considered along with other factors in determining whether parental rights can be terminated. Specifically, it is proper to consider a parent's inability to perform his or her parental obligations because of incarceration.
3. **Parental Rights: Abandonment.** Although incarceration itself may be involuntary as far as the parent is concerned, the criminal conduct causing the incarceration is voluntary.
4. **Parental Rights.** Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights.
5. **Constitutional Law: Appeal and Error.** Generally, a constitutional issue not passed upon by the trial court is not appropriate for consideration on appeal.

6. **Appeal and Error.** When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.

Appeals from the Separate Juvenile Court of Douglas County: Christopher Kelly, Judge. Affirmed.

Joseph L. Howard, of Dornan, Lustgarten & Troia, P.C., L.L.O., for intervenor-appellant Reon W. in No. S-14-550.

Thomas C. Riley, Douglas County Public Defender, and Zoë R. Wade for appellee P'lar'e S. in No. S-14-550 and appellant P'lar'e S. in No. S-14-564.

Donald W. Kleine, Douglas County Attorney, Amy Schuchman, and Jennifer Chrystal-Clark for appellee State.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Stephan, J.

Reon W. and P'lar'e S. are the biological parents of Zanaya W., Mileaya S., and Imareon S. The separate juvenile court of Douglas County terminated their parental rights to the children, and both filed timely appeals. Reon's appeal and P'lar'e's cross-appeal are before us as case No. S-14-550.

Reon and P'lar'e are also the parents of Jahon S. In separate proceedings, the juvenile court also terminated their parental rights to Jahon. P'lar'e's appeal is before us in case No. S-14-564. Reon's appeal is separately docketed as case No. S-14-1049 and is not the subject of this opinion. We granted P'lar'e's petition to bypass and consolidated cases Nos. S-14-550 and S-14-564 for disposition. We now affirm the judgment of the juvenile court in each case.

## BACKGROUND

### General

In March 2011, the State filed a petition alleging Zanaya, then 2 years old, and Mileaya, then approximately 1 year old,

came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) due to the fault or habits of P'lar'e. The children were removed from P'lar'e's custody and placed with Reon. In July, Reon was allowed to intervene in the juvenile proceedings as an interested party. Imareon was born in May 2012, and the petition was subsequently amended to include him as a child within the meaning of § 43-247(3)(a) due to the fault or habits of P'lar'e. Zanaya, Mileaya, and Imareon were adjudicated in July 2012 after P'lar'e admitted she had failed to provide them with safe and stable housing and had failed to participate in necessary mental health treatment for herself. Imareon was also placed with Reon.

The original disposition was in September 2012. At that time, the permanency objective was family preservation with Reon and a concurrent objective of reunification with P'lar'e. P'lar'e was ordered to work with her psychiatrist for medication management and take all medications prescribed, to submit to random drug and alcohol testing a minimum of two times per week, to continue to participate in individual therapy, to participate in an outpatient substance abuse program and mental health therapy, and to cooperate with family support workers and the Department of Health and Human Services (DHHS). P'lar'e was allowed supervised visitation with the children.

P'lar'e completed 5 of 10 scheduled visits with the children in September 2012 and 1 of 6 scheduled visits in October. Her caseworker reported that during visits, P'lar'e struggled to engage appropriately with the children, but did show them verbal and physical affection. P'lar'e missed scheduled drug tests in May, June, and August. She also missed four scheduled appointments with a psychiatrist between March and September. P'lar'e stopped visitation in November, when she moved to Detroit, Michigan. At that time, she understood Reon was going to be given custody of the children and she was comfortable with that. She testified that she was capable of parenting at that time but was tired of the process and decided to just let the children be with Reon. P'lar'e and Reon

agreed she could have visits with the children, supervised by him. After P'lar'e moved to Detroit, the permanency objective changed to family preservation with Reon and DHHS stopped making efforts to reunify P'lar'e and the children.

In March 2013, Reon was arrested for possessing marijuana with intent to distribute. In April, a supplemental petition was filed alleging Zanaya, Mileaya, and Imareon came within § 43-247(3)(a) due to the fault or habits of Reon. As relevant to this case, it was alleged that Reon used and/or possessed controlled substances in the home and that Reon failed to provide safe housing for the children. Reon admitted these allegations, and the children were adjudicated and placed in the care and custody of DHHS.

Meanwhile, P'lar'e returned to Nebraska in February 2013. In an April 2013 review order, the court allowed her to resume DHHS-supervised visitation with the children. It also ordered her to submit to random drug and alcohol testing.

## Termination of Reon's Parental Rights

On January 21, 2014, the State petitioned to terminate Reon's parental rights to Zanaya, Mileaya, and Imareon based on an allegation that he substantially and continuously or repeatedly neglected and refused to give them necessary parental care and protection.[1] The petition also alleged that the children had been in an out-of-home placement for 15 or more of the most recent 22 months.[2] The petition further alleged that terminating Reon's parental rights was in the best interests of the children.

Reon initially denied the allegations in the petition. At a May 19, 2014, hearing, however, he informed the court he wished to admit the allegations that (1) he substantially and continuously or repeatedly neglected the children and refused to give them parental care and protection and (2) termination

---

[1] See Neb. Rev. Stat. § 43-292(2) (Cum. Supp. 2014).

[2] See § 43-292(7).

of his parental rights was in the children's best interests. The court advised Reon of the rights he would be waiving by making the admissions and ascertained that his admissions were freely and voluntarily given. The court then asked the State to give a factual basis for the admissions, and it responded:

> Your Honor, if called today, Janece Potter[, a family permanency specialist,] would testify that [the children] have been in foster care since April of 2013 when they were removed from the care of their father due to his incarceration. The evidence will also show that the father was convicted of possession with intent to distribute marijuana.
>
> And the State would offer Exhibit 54, a certified copy of that conviction. Exhibit 54 would also show that the father was sentenced to three to five years for his conviction of possession with intent to distribute. In addition, the State offers Exhibit 56, an additional conviction of the father for an assault that occurred while he was incarcerated in which he was sentenced an additional 120 days.
>
> If called to the stand, Janece Potter would testify that it's in the children's best interests that their father's rights be terminated due to incarceration and the fact that he's not able to provide permanency for the children currently, nor will be — will he be enabled to provide permanency for them in the upcoming — for at least a year.

The State later added:

> [I]f Janece Potter were to testify, she would testify that while the children were in the father's care and custody, which occurred when they were initially removed [in March 2011] up until April of 2013, the father had admitted, once incarcerated, to using marijuana on a daily basis while he had care, custody, and control of his children.

The record shows that Janece Potter is a representative of the Nebraska Families Collaborative and was the family permanency specialist for DHHS in the juvenile proceedings.

The court accepted Reon's admissions and found the allegations in the petition pertaining to neglect under § 43-292(2) and the best interests of the children had been proved by clear and convincing evidence. It then stated on the record that "it is the agreement of the parties that the Court will make a finding that this is, in fact, a voluntary termination of parental rights on the part of the father." Reon agreed to this statement. The court then terminated Reon's parental rights.

### Termination of P'lar'e's Parental Rights

The State also moved to terminate P'lar'e's parental rights to Zanaya, Mileaya, and Imareon on January 21, 2014. The petition alleged three grounds under § 43-292: subsections (2) (substantial neglect), (6) (failure to correct conditions leading to adjudication), and (7) (out-of-home placement for 15 of last 22 months). On February 25, the State also moved to terminate P'lar'e's parental rights to Jahon, born in November 2013. The petition alleged that termination of parental rights as to Jahon was proper under § 43-292(2), because P'lar'e had substantially and continuously or repeatedly neglected or refused to give Jahon's siblings (Zanaya, Mileaya, and Imareon) necessary parental care and protection. The juvenile court appointed a guardian ad litem for P'lar'e in the termination proceedings.

A trial on both petitions was held in May 2014. The State introduced evidence that the three older children had been in their current foster home since April 13, 2013, and that Jahon had been in that home since shortly after his birth. The foster mother testified that the three older children exhibited negative changes in their behavior after visits with P'lar'e, including becoming aggressive, having nightmares, and being "whiny" and "clingy."

Potter, the family permanency specialist, also testified. She testified that in March 2013, P'lar'e reported that she had "run out" of her psychiatric medication and was not taking it. P'lar'e had stopped seeing her mental health therapist in

October 2012, before she moved to Detroit. She resumed therapy again in June 2013, but refused to release her therapy records to DHHS. She stopped therapy again in November and then started with a new therapist in December. By the time of trial in May 2014, she had been seeing a therapist and drug counselor for 5 months and was not on psychiatric medication. She testified at trial that she was not on medication because she had been pregnant twice while the proceedings were ongoing.

Beginning in 2012, all of P'lar'e's visits with the children were supervised and she consistently demonstrated an inability to appropriately interact with and discipline the children. From September 2012 to February 2014, P'lar'e attended approximately 75 percent of the scheduled supervised visits and complied with about 50 percent of the family support services offered to her. She also completed only about 50 percent of the drug tests she was scheduled to take. During this time period, P'lar'e also failed to maintain stable housing and she drifted from various shelters to the homes of friends. P'lar'e lived in Fremont, Lincoln, and Omaha, Nebraska, during this time period. At the time of trial, she had obtained a voucher for housing and believed she could provide housing for the children. She did not have and never had suitable transportation for herself or the children. P'lar'e testified that she knew Reon was selling and using marijuana in the spring of 2013 while he had custody of the children.

The State did not present any evidence that P'lar'e had been diagnosed with a mental illness. However, during cross-examination of Potter, P'lar'e elicited testimony that she receives Supplemental Security Income because of her mental health issues. Additionally, P'lar'e testified that she has been diagnosed with manic depressive disorder.

After trial, the court terminated P'lar'e's rights to all the children. It found clear and convincing evidence that Zanaya, Mileaya, and Imareon were within the meaning of § 43-292(2), (6), and (7) and that termination of P'lar'e's parental rights was in their best interests. It found clear and convincing

evidence that Jahon came within the meaning of § 43-292(2) and that termination of P'lar'e's parental rights was also in his best interests. P'lar'e filed timely appeals, and we consolidated the cases for review.

## ASSIGNMENTS OF ERROR

Reon assigns in case No. S-14-550 that the juvenile court erred in (1) terminating his parental rights without first obtaining a sufficient factual basis to support his admissions to the allegations in the petition, (2) terminating his parental rights under § 43-292(2), and (3) terminating his parental rights under § 43-292(7).

P'lar'e assigns in both cases Nos. S-14-550 and S-14-564 that she was deprived of a fundamentally fair proceeding when the State was allowed to "proceed to termination under §§ 43-292(2), (6), and (7), instead of § 43-292(5), when the State was fully aware [she] was mentally ill and that her mental illness affected her capacity to parent."

## STANDARD OF REVIEW

[1] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other.[3]

## ANALYSIS

### Reon

Reon assigns that the juvenile court erred in terminating his parental rights under § 43-292(7). That subsection allows termination when the children have been in out-of-home placement for 15 of the last 22 months, and Reon contends in his brief that the facts do not support termination on this ground.

---

[3] *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012).

But the juvenile court did not terminate Reon's rights based on § 43-292(7). It was alleged as a ground for termination in the petition, but it was dismissed when Reon entered his admission to the § 43-292(2) allegation. Because § 43-292(7) was not a ground utilized by the juvenile court, we need not address this argument on appeal.

Reon also assigns and argues that the State failed to prove the § 43-292(2) allegation by clear and convincing evidence. But he admitted this allegation in the petition. In *In re Interest of L.B., A.B., and A.T.*,[4] a mother admitted the allegations in the termination petition. We characterized this as a judicial admission, noting a judicial admission is "'a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true.'"[5]

Because Reon admitted the § 43-292(2) allegation in the petition to terminate, the State did not have to independently prove it by clear and convincing evidence. But it was required to put forth a factual basis for the allegations in the petition, even though Reon admitted them.[6] Reon contends the State failed to do so, thus making his admissions invalid.

According to § 43-279.01(3), when termination of parental rights is sought, a court may accept an in-court admission as to all or any part of the allegations in the petition. Section 43-279.01(3) then specifically states that the "court shall ascertain a factual basis for an admission." The statute does not specify precisely what the factual basis must entail.

Here, Reon admitted two allegations: (1) that he substantially and continuously or repeatedly neglected and refused to give the children necessary parental care and protection and (2) that termination of his parental rights was in the children's

---

[4] *In re Interest of L.B.*, *A.B., and A.T.*, 235 Neb. 134, 454 N.W.2d 285 (1990).

[5] *Id*. at 140, 454 N.W.2d at 289.

[6] See Neb. Rev. Stat. § 43-279.01(3) (Cum. Supp. 2014).

best interests. The factual bases to support the allegation that Reon had substantially and continuously or repeatedly neglected the children or refused to give them necessary parental care and protection was that Reon was convicted of possession with intent to distribute marijuana and that on September 10, 2013, he was sentenced to 3 to 5 years' incarceration. Further, while incarcerated, Reon was convicted of third degree assault and sentenced to an additional 120 days, the sentence to run consecutively to the previous sentence. In addition, the factual bases included that Reon had admitted while he was incarcerated that he used marijuana on a daily basis while the children were in his care, custody, and control. The record shows that the children were in his care, custody, and control from March 2011 to March or April 2013.

[2,3] Reon argues that these factual bases relied extensively on the fact that he was incarcerated and were thus insufficient. To support this argument, he emphasizes that we have held that incarceration alone does not provide a ground for termination of parental rights.[7] While this is true, we have also stated that incarceration may be considered along with other factors in determining whether parental rights can be terminated.[8] Specifically, it is proper to consider a parent's inability to perform his or her parental obligations because of incarceration.[9] And although incarceration itself may be involuntary as far as the parent is concerned, the criminal conduct causing the incarceration is voluntary.[10]

Here, the incarceration alone was not the sole factual basis offered in support of Reon's admissions. Instead, the State showed what crimes Reon was incarcerated for and for how

---

[7] See, *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012); *In re Interest of Kalie W.*, 258 Neb. 46, 601 N.W.2d 753 (1999); *In re Interest of Josiah T.*, 17 Neb. App. 919, 773 N.W.2d 161 (2009).

[8] See *In re Interest of Kalie W., supra* note 7; *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992).

[9] *In re Interest of Ryder J., supra* note 7.

[10] *In re Interest of Kalie W., supra* note 7.

long he was incarcerated. It further showed that he committed an additional crime while incarcerated, thus extending his sentence. It also showed that he used marijuana daily while the children were in his custody. These factual bases were sufficient to support Reon's admission to the allegation that he had substantially and continuously or repeatedly refused to give the children proper parental care.

[4] With respect to the best interests allegation, the factual basis provided by the State was that the caseworker would testify that termination was in the children's best interests because Reon was not able to provide permanency for them. This testimony was given on May 19, 2014, and on that date, the State also informed the court that the children had been in foster care since April 2013. There was also evidence that Reon at the time was subject to one prison term of 3 to 5 years and another prison term of 120 days. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights.[11] This was a sufficient factual basis for the admission that termination of Reon's parental rights was in the children's best interests. For these reasons, we find no error in the order terminating Reon's parental rights to Zanaya, Mileaya, and Imareon.

## P'lar'e

P'lar'e's sole assignment of error in both cases Nos. S-14-550 and S-14-564 is that her due process rights were violated because the State was "allowed to proceed" to termination under a ground other than § 43-292(5) when it was aware she had a mental illness that affected her ability to parent. Section 43-292(5) allows termination of parental rights when "[t]he parents are unable to discharge parental responsibilities because of mental illness or mental deficiency and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period."

---

[11] *In re Interest of Ryder J., supra* note 7.

This court rejected a similar argument in *In re Interest of J.N.V.*,[12] a case in which the parental rights of a parent who had been diagnosed with paranoid schizophrenia and required long-term hospitalization were terminated on the ground of neglect pursuant to § 43-292(2). In a divided opinion, the majority concluded that "[w]hile it might have been kinder . . . for the State to have proceeded under § 43-292(5), it was not required to do so."[13] A dissenting opinion concluded that it was "fundamentally unfair to tell a mother it is the neglect of her son which is at issue and then try her for lacking the mental capacity to carry out her parental responsibilities."[14]

[5,6] P'lar'e argues on appeal that we should overrule *In re Interest of J.N.V.* and adopt the reasoning of its dissent. But she did not raise this due process argument to the juvenile court. Generally, a constitutional issue not passed upon by the trial court is not appropriate for consideration on appeal.[15] When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.[16]

P'lar'e argues that we can nevertheless reach the issue under the reasoning of *In re Interest of Mainor T. & Estela T.*[17] In that case, we held that a parent's failure to appeal from orders which preceded the termination of parental rights did not preclude our consideration of issues which could have been raised in such appeals because there was plain error which permeated the proceedings and denied fundamental fairness to the parent. That is not the case here.

---

[12] *In re Interest of J.N.V.*, 224 Neb. 108, 395 N.W.2d 758 (1986).

[13] *Id.* at 112, 395 N.W.2d at 761.

[14] *Id.* at 114, 395 N.W.2d at 762 (Caporale, J., dissenting).

[15] *Lindner v. Kindig*, 285 Neb. 386, 826 N.W.2d 868 (2013).

[16] *Maycock v. Hoody*, 281 Neb. 767, 799 N.W.2d 322 (2011); *Ways v. Shively*, 264 Neb. 250, 646 N.W.2d 621 (2002).

[17] *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004).

P'lar'e does not complain of any procedural irregularities in the manner in which the termination proceedings were conducted. She was represented by appointed counsel throughout the case, and a guardian ad litem was appointed for her, which is required only when termination is sought under § 42-292(5).[18] Her sole complaint is that she was deprived of a fair proceeding because the State was "allowed to proceed to termination under § 43-292(2) . . . instead of § 43-292(5)." Given that no one objected to the State's proceeding under § 43-292(2) and that it was permitted to do so under the existing precedent of *In re Interest of J.N.V.*, the fact the juvenile court did not sua sponte direct the State to proceed under § 43-292(5) instead can hardly be characterized as plain error, which we have defined as error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[19]

We therefore conclude that P'lar'e's sole assigned error is not preserved for our review.

## CONCLUSION

There was a sufficient factual basis in the record to support Reon's admissions to the allegations in the petition to terminate his parental rights to Zanaya, Mileaya, and Imareon. We affirm the decision of the juvenile court as to Reon in case No. S-14-550.

P'lar'e's argument that the State violated her due process rights in cases Nos. S-14-550 and S-14-564 by failing to base termination on § 43-292(5) was not preserved for appeal. We affirm the decisions of the juvenile court in both cases.

AFFIRMED.

---

[18] See, Neb. Rev. Stat. § 43-292.01 (Reissue 2008); *Wayne G. v. Jacqueline W.*, 288 Neb. 262, 847 N.W.2d 85 (2014).

[19] *In re Interest of Jamyia M.*, 281 Neb. 964, 800 N.W.2d 259 (2011); *In re Interest of Markice M.*, 275 Neb. 908, 750 N.W.2d 345 (2008).