IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF SANDRA I.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF SANDRA I., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

SANDRA I., APPELLANT.


Filed November 8, 2016.    No. A-16-371.


Appeal from the Separate Juvenile Court of Lancaster County: REGGIE L. RYDER, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Sarah J. Safarik for appellant.

Joe Kelly, Lancaster County Attorney, and Jessica Murphy for appellee.


INBODY and PIRTLE, Judges, and MCCORMACK, Retired Justice.

PIRTLE, Judge.

## I. INTRODUCTION

Sandra I. appeals the order of the separate juvenile court of Lancaster County adjudicating her as a juvenile within the meaning of Neb. Rev. Stat. § 43-247(3)(b) (Cum. Supp. 2014) for being habitually truant between August 12 and November 4, 2015. For the reasons that follow, we affirm.

## II. BACKGROUND

On November 24, 2015, the State of Nebraska filed a petition in the Separate Juvenile Court for Lancaster County, alleging that Sandra was a juvenile defined by § 43-247(3)(b). The

petition alleged Sandra was habitually truant from school between the dates of August 12 and November 4. It alleged that on October 23, the Lancaster County Attorney's office provided Sandra's mother with a letter which (1) referred the family to a guide of available resources in Lancaster County, (2) encouraged the family to work closely with the school to access these or other resources, and (3) provided information about how to contact the county's Truancy Resource Specialist if the student/family needed assistance in accessing appropriate services to overcome any barriers to regular school attendance that the student/family was encountering.

A formal hearing was held on the petition on March 28, 2016. Nancy Willemson, an attendance technician for Lincoln High School testified that there are various ways an absence is marked on an attendance record. A truancy is marked with the letters TR when the student is absent and there was no acknowledgement from the parent. Willemson marks an absence as PA when the student's absence is 'parent acknowledged,' such as when a student needs to leave school for an appointment. The code IL is used when the parent excuses the student for illness, and MD is marked when absences are medically documented with a doctor's note. If the doctor indicates that the student could not attend school, the absence is marked as MD, but if the student is simply attending an appointment, the absence is marked as PA or IL. Absences marked TR, PA, or IL are classified as unexcused. Absences marked MD, or absences related to school activities are classified as excused.

An attendance report for Sandra was entered as Exhibit 1. The report showed that Sandra missed 84.64 days of school between August 31, 2015, and March 28, 2016, of which days 76.63 were unexcused. Willemson testified that "stage letters" are sent to students who miss excessive amounts of school. The letters are sent after 5, 10, 15, and 20 days of missed school. The letters include an attendance report and after 10 days, the letters direct the parent to call for an appointment with the school to discuss the absences. The fourth letter, issued after 20 days of missed school, indicates that the student will be referred to the County Attorney for a truancy filing. At that point, the school sets up a collaborative plan meeting for the family with school officials to address the student's truancy.

Jarrell Green, the attendance team leader at Lincoln High School, testified that his duties include creating collaborative plans to help students with attendance issues to improve their attendance. A collaborative plan meeting is a meeting with the parent, student, the student's counselor, an administrator, and the school nurse, if necessary. The goal is to find ways to prevent the student from missing more school.

Green testified that Exhibit 2 is a copy of Sandra's collaborative plan from a meeting held on October 23, 2015. Green testified that Sandra, her mother, an administrator, Sandra's counselor, and the school nurse attended the meeting. The collaborative plan indicated that Sandra's physical or behavioral health poses a barrier to her regular attendance, and that the family was "working on getting tests to find out what is happening as far a [sic] health issues." Green testified that at that time, Terri I., Sandra's mother, was trying to get medical documentation to the school nurse to help with Sandra's attendance or to excuse Sandra's absences. They also planned to reduce Sandra's schedule to periods 5 through 8 to allow Sandra to earn some credit by focusing her attention on certain classes.

Green testified that at collaborative plan meetings, the school provides a letter to parents or guardians from the County Attorney that contains information regarding community assistance agencies in Lincoln and Lancaster County. The letter refers families to a website for a guide of available resources and encourages families to work with the school to access those or other resources. The letter also provides the contact information for the County Truancy Resource Specialist. The parents are always asked to initial the collaborative plan to indicate their receipt of the community resource letter. Green identified Exhibit 3 as the letter the school provides to the parents. Exhibit 3 was entered into evidence over Sandra's hearsay and foundation objections.

Terri testified that she received the community based resources letter, and that she did not attempt to use any of the resources provided. She said that she assumed the resources provided were for "things like transportation, like gas vouchers -- and free food," which would not address her "issues." She said her "issues" were getting a diagnosis for Sandra and finding appropriate medical care.

Terri said that even with the decrease in Sandra's school schedule, she continued to miss school. Terri testified that she is familiar with Sandra's health issues, and that she transports Sandra and attends all doctor appointments. The symptoms Sandra exhibits include fatigue, paleness, insomnia or difficulty sleeping at night, sleeping during the day, and having difficulty waking up. These symptoms appear on weekdays as well as weekends. At the time of the hearing, Sandra was undergoing going occupational and physical therapy every Wednesday and her primary care doctor recommended Melatonin to help her sleep at night. The doctor recommended that Sandra see a therapist or psychiatrist once per month for cognitive behavioral therapy.

Terri testified that she made the decisions regarding whether Sandra would attend school based on her evaluation of Sandra's health. When Sandra does not attend school due to her illness, she lays in her room and listens to music. Terri testified that she did not notify the school when Sandra would be absent, and she provided no medical documentation related to Sandra's absences after the collaborative plan meeting on October 23, 2015. She said she did not know that it made a difference whether she called the school, because she was told the absences would all be marked as truant. Terri testified that Sandra missed four periods of school on the day of the hearing, March 28, 2016, because Sandra experienced insomnia the night before.

Jared Gavin, a social worker for the Lancaster County Public Defender's Office was called to testify. The juvenile court found that Gavin's testimony, regarding the accessibility and ease of use of the community resources website, was not relevant because Terri had never attempted to use these resources.

The court found that the County Attorney's office provided adequate notice of the community resources available to Sandra and her family. The court concluded that there was sufficient evidence to show that the allegations that Sandra was habitually truant were true, beyond a reasonable doubt. Sandra timely appealed.

## III. ASSIGNMENTS OF ERROR

Sandra asserts the juvenile court erred in (1) finding there was sufficient evidence that the County Attorney complied with notice requirements prior to filing the petition; (2) overruling her objections to Exhibit 3 and allowing it into evidence; (3) excluding the testimony of Jared Gavin

at the adjudication hearing; and, (4) finding there was sufficient evidence to adjudicate Sandra as a child within the meaning of § 43-247.

## IV. STANDARD OF REVIEW

An appellate court reviews cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Zanaya W. et. al.*, 291 Neb. 20, 863 N.W.2d 803 (2015). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witness and accepted on version of the facts over the other. *Id.*

To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. *In re Interest of Katrina R.*, 281 Neb. 907, 799 N.W.2d 673 (2011).

## V. ANALYSIS

### 1. NOTICE REQUIREMENTS

Sandra asserts evidence presented at the adjudication hearing was insufficient to find that the County Attorney complied with the requirements of Neb. Rev. Stat. § 43-276 (Cum. Supp. 2015), which states:

> Prior to filing a petition alleging that a juvenile is a juvenile as described in subdivision (3)(b) of section 43-247, the county attorney shall make reasonable efforts to refer the juvenile and family to community-based resources available to address the juvenile's behaviors, provide crisis intervention, and maintain the juvenile safely in the home. Failure to describe the efforts required by this subsection shall be a defense to adjudication.

Green testified that students at Lincoln High School who struggle with regular attendance are invited to a collaborative plan meeting to address their individual barriers to attendance. The meeting involves the student, their parent(s), administrators, counselors, and sometimes the school nurse. The attendees work together to identify the student's needs and create a plan for addressing these needs. Green said the goal of this meeting is to "prevent having to send [the student] to the County Attorney" for truancy.

At the collaborative plan meetings, the school provides a letter prepared by the County Attorney and the Lincoln Public Schools. This letter specifically requests that the family "review the 'Lancaster County Resource Guide' found under the 'Community Resources' on LPS's Parent Page at http://www.lps.org/parents/." The letter advises the families to follow up with programs listed in the guide that may help address the student's specific issues. The letter also states "if you need help accessing any of those resources or determine that some other kind of assistance would be most beneficial to your family, we ask that you work closely with your school as part of the collaborative planning process." The letter advises that there is a person on staff at the Lincoln/Lancaster County Human Services Office who can assist families in accessing resources or determining whether other resources are available to address the barriers to the student's regular

attendance at school. The phone number and office hours of the Truancy Resource Specialist are provided.

Green testified that this letter was provided to Sandra's mother, Terri on October 23, 2015. Terri initialed Sandra's collaborative plan confirming her receipt of the letter. Her initials appear next to this statement:

> 7. Provided a copy of the County Attorney Community-Based Resources Referral Letter to the family, as indicated by their initials. Parent/Guardian initials ____.

Terri testified that she received "a community based resources letter" and that she did not make any attempt to access or utilize any of the listed resources. She did not visit the website to access the county resource guide or call the phone number of the Truancy Resource Specialist.

Sandra asserts the letter was insufficient to fulfill the requirements of the statute because it did not give her information about how to address her specific barriers to regular school attendance. She argues the letter, given to all families of students struggling with attendance, is too generic as it did not directly refer her and her mother to community based resources designed to assist students who miss school for health-related reasons.

Statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *In re Interest of Danajah G.*, 23 Neb. App. 244, 870 N.W.2d 432 (2015). The statute requires the County Attorney to make reasonable efforts to refer the juvenile and family to community based resources available to address the juvenile's behaviors, provide crisis intervention, and maintain the juvenile's safety in the home. The statute requires the County Attorney to address a broad range of issues, thus the letter is broad as well. The letter advises families that there are two ways to gain information; by browsing the available programs listed on the LPS website, or by contacting the specialist who assists families with determining what specific resources are best for them.

To require the County Attorney to refer each student to the specific services relevant to their individual circumstances would be adding a requirement to the statute which does not exist. Additionally, the County Attorney is not the person who is most familiar with the services available to the students. The truancy resources specialist, and the school employees who work closely with the student are the most familiar with the student, and with the resources available that best address that individual's needs. Upon our de novo review, we find there was sufficient evidence that the County Attorney complied with the requirements of § 43-276(2).

### 2. EXHIBIT 3

Sandra asserts the juvenile court erred in overruling her objections to Exhibit 3, and admitting the community-based resources referral letter as evidence. The letter dated October 23, 2015, was addressed to Sandra from the Chief Deputy County Attorney, Alicia B. Henderson. For the reasons set forth below, we conclude the juvenile court did not err in determining the appropriate foundation was provided and that Sandra was not prejudiced by the admission of Exhibit 3 over her hearsay objection.

(a) Foundation

Exhibit 3 was admitted into evidence based on the testimony of Lincoln High School Attendance Team Leader, Green. Sandra asserts that Exhibit 3 should not have been admitted "because insufficient foundation was laid to authenticate the exhibit." Specifically, she argues that Green's testimony was insufficient to authenticate the signature of the "author" of the letter.

Neb. Rev. Stat. § 27-901(1) (Reissue 2008) states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

Green testified that his job duties include attending collaborative plan meetings, and that he provides a letter from the office of the Lancaster County Attorney to the parents at these meetings. Green testified that the document identified as Exhibit 3 is the letter that was drafted by Lincoln Public Schools and the County Attorney's office, and that it was a fair and accurate copy of the letter provided to Sandra and her family on October 23, 2015. Green's testimony confirmed the source of the letter, and satisfied the requirement to show the letter was what it claimed to be; a letter from the County Attorney that was provided to the family of a child struggling with attendance at school, referring them to available community resources. Thus, the juvenile court did not err receiving the letter over Sandra's foundation objection.

(b) Hearsay

Sandra asserts Exhibit 3 is hearsay and it is not admissible under any applicable hearsay exception. She asserts the State offered Exhibit 3 to show that the County Attorney referred Sandra and her family to community based resources prior to the filing of the Petition, as required by § 43-276(2).

Neb. Rev. Stat. § 27-801(3) (Reissue 2008) defines hearsay as a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. One definition of "statement," for the purposes of the Nebraska Evidence Rules, is "an oral or written assertion." § 27-801(1). The Nebraska Supreme Court has stated "If an out-of-court statement is not offered for proving the truth of the facts asserted, it is not hearsay." *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011).

The State contends that the letter was offered for a permissible, nonhearsay purpose. Specifically, that the letter had legal significance, independent of the truth of the matter asserted, because it qualified as a "verbal act." See *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011) (a nonhearsay purpose for offering a statement exists when a statement has legal significance because it was spoken, independent of the truth of the matter asserted).

We do not decide whether the letter Sandra characterizes as hearsay was properly admitted because the erroneous admission of evidence is harmless error and does not require reversal if such evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact. *Eisenhart v. Lobb*, 11 Neb. App. 124, 647 N.W.2d 96 (2002).

The letter was offered by the State to show that the County Attorney complied with the requirements of § 43-276(2). As discussed in detail, above, Green testified that the county attorney's letter, provided to Sandra's family, contained a referral to numerous resources available to families struggling with attendance issues. He said the letter encourages families to work with

the school to access the appropriate resources, and provides the contact information for the County's Truancy Resources Specialist. There was no objection to Green's testimony.

Further, Terri testified that she received a "community based resources letter," and acknowledged that the letter was from the County Attorney. She was asked "Did you attempt to access or utilize any of those resources" and she replied, "No." One could, therefore, conclude that Sandra's family received a letter from the County Attorney with referrals to community based services, even without consideration of the letter itself.

We find the information contained in the letter was cumulative and Sandra was not prejudiced by its admission. Thus, we decline to address whether the court erred in admitting Exhibit 3 over Sandra's hearsay objection. An appellate court is not obligated to engage in an analysis which is not necessary to adjudicate the case and controversy before it. *Eisenhart v. Lobb, supra*.

### 3. EXCLUSION OF WITNESS TESTIMONY

Sandra asserts the juvenile court erred in excluding the testimony of Jared Gavin, who was called to testify about the steps required to use the website referred to in the County Attorney's letter. She argues Gavin's testimony was relevant to showing whether the community based resources Sandra was referred to actually exist, and whether those resources were sufficient to fulfill the requirements of § 43-276.

Relevant evidence means any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Neb. Rev. Stat. § 27-401 (Reissue 2008). The State's petition alleged the Lancaster County Attorney's office provided Terri with a letter referring the family to a guide of available resources in Lancaster County, encouraged the family to work closely with the school to access those resources, and advised Terri about how to contact the Truancy Resource Specialist for assistance in identifying or accessing the appropriate services.

As previously discussed, the County Attorney made reasonable efforts to refer Sandra and her family to community-based resources. Terri testified that she received the letter but did not attempt to visit the website or contact the Truancy Resource Specialist. Gavin's testimony regarding the existence and ease of use of the website is irrelevant, and his testimony was properly excluded.

### 4. SUFFICIENCY OF EVIDENCE

Sandra asserts the evidence presented at the adjudication hearing was insufficient to sustain an adjudication of jurisdiction under § 43-247(3)(b).

Under § 43-247(3)(b), the juvenile court in each county has jurisdiction of any juvenile who is habitually truant from home or school. Habitual truancy is not defined in the juvenile code, but the Nebraska Supreme Court has accepted the dictionary definition of truant as a "pupil who stays away from school without permission." In *In re Interest of K.S.*, 216 Neb. 926, 346 N.W.2d 417 (1984), the Nebraska Supreme Court stated that a child is "no less truant if permission were obtained from one without the authority to grant permission," and that under Nebraska compulsory attendance law, only school authorities are authorized to grant permission to be absent.

Sandra argues that the law now provides a specific exception "where illness or severe weather" make attendance impossible or impracticable. As a result, she argues that the proposition that "a juvenile is not complying with the compulsory education statutes without being first excused by school authorities establishes truancy" is no longer good law. See *In re Interest of K.S.*, 216 Neb. 926, 346 N.W.2d 417 (1984), (superseded by statute as stated in *In re Interest of Kevin K.,* 274 Neb. 678, 742 N.W.2d 767 (2007)). Sandra asserts that when she was absent from school it was with the knowledge and permission of her mother, or she was medically excused, thus there is insufficient evidence of her truancy.

We acknowledge that the statutes have changed since the decision in *In re Interest of K.S., supra*. However, the Nebraska Supreme Court continues to hold that the mere fact that a juvenile is not complying with the compulsory education statutes without being first excused by school authorities establishes truancy and grants the juvenile court jurisdiction under § 43-247(3)(b). *In re Interest of Samantha C.*, 287 Neb. 644, 843 N.W.2d 655 (2014). In *In re Interest of Samantha C.*, the Supreme Court found that 27 days of absences, not excused by school authorities was sufficient to show that the juvenile was not compliant with compulsory education statutes.

Evidence was presented at the adjudication hearing that Sandra missed 84 days of school between August 31, 2015, and March 28, 2016, and 76 of those days were unexcused. Sandra's mother testified that, after the collaborative plan meeting on October 23, 2015, she did not provide any medical documentation showing that Sandra suffered an illness making school attendance impossible or impracticable. She also stated that she did not regularly contact the school to excuse Sandra. Sandra presented no medical testimony to support her assertion that illness prevented her from attending school. The only evidence of Sandra's illness was Terri's testimony regarding her observation of Sandra's symptoms. Upon our de novo review, we find the evidence was sufficient to find beyond a reasonable doubt that Sandra was habitually truant from school.

## VI. CONCLUSION

For the reasons stated above, we find the juvenile court properly adjudicated Sandra as a child within the meaning of § 43-247(3)(b).

AFFIRMED.