IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF DENISA S.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF DENISA S., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

JOSE S., APPELLANT.

Filed October 27, 2020.    No. A-20-332.

Appeal from the County Court for Lincoln County: KENT D. TURNBULL, Judge. Affirmed.

Daniel S. Reeker, of Kendall, Crawford & Reeker, P.C., L.L.O., for appellant.

Rebecca Harling, Lincoln County Attorney, for appellee.

PIRTLE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Jose S. appeals from an order of the county court for Lincoln County, sitting as a separate juvenile court, terminating his parental rights to Denisa S. For the reasons that follow, we affirm.

## BACKGROUND

Jose is the father of Denisa, born in August 2014. Denisa's mother has relinquished her parental rights to Denisa and to Denisa's half siblings; therefore, we do not address the mother except to provide context.

On December 3, 2019, the State filed a motion to terminate Jose's parental rights to Denisa pursuant to Neb. Rev. Stat. §§ 43-292(2) and (7) (Reissue 2016).

- 1 -

Evidence at the termination hearing showed that Denisa has been made a ward of the State three times in her life. Chantelle Reicks, a caseworker from the Department of Health and Human Services (the Department), testified about the circumstances of this case and the two previous juvenile cases involving Denisa and Jose, which occurred in Douglas County.

In 2015, Denisa and her older half siblings were removed from the home of Jose and their mother due to domestic violence. The Department alleged that Jose had thrown glass at Denisa's mother and that he had given her a black eye. Denisa and the other children were returned to the home in November 2015, and that case concluded.

In 2016, the Department received an intake alleging concerns about the children's hygiene and care. Denisa and her siblings were found to be dirty and dressed in inappropriate clothing. The children did not have beds, and both the home and family vehicle were unsanitary and full of trash. As a result of this removal, Denisa and her siblings were placed with foster parents in Omaha, Nebraska. Denisa was never returned to Jose's care after the 2016 removal.

Denisa and her siblings remained in the foster home from November 2016 until August 2019, when the Douglas County Separate Juvenile Court reunited the children with their mother and concluded the case. Jose was no longer living with Denisa's mother at that time. However, the children were again removed from the mother's care a few weeks later, in September 2019. The mother had been arrested in North Platte, Nebraska, for driving under the influence while her six children, including Denisa, were inside the vehicle. The children were returned to the foster home in Omaha. The State then initiated proceedings in this case.

After Denisa was made a state ward in this case, Reicks attempted to contact Jose in order to introduce herself and set up a meeting. Jose stated that he was not willing to cooperate with the Department except to set up visitation with Denisa. He refused to discuss his work situation with Reicks or to sign a release allowing his attorney to communicate with the Department. Aside from that call, Jose never requested visitation with Denisa or requested that the Department set up any services for him. He did not send any letters to Denisa, which Reicks arranged to have translated if he wished to write in Spanish.

From the time Denisa was first placed in the foster home in 2016 to the time of the termination hearing, Jose did not attend any medical appointments with Denisa, and he did not take her to counseling or to daycare. Jose did not visit Denisa at all between January and September 2017, though he was permitted visitation. After September 2017, Jose was scheduled to have visitation with Denisa multiple times a week, but he often cancelled due to his work. Jose never progressed past therapeutic or fully supervised supervision with Denisa in either the Douglas County or Lincoln County cases. Although Jose was ordered by the Douglas County Separate Juvenile Court to take a domestic violence class in January 2017, Reicks testified that the files in the Douglas County case showed that in October 2018, Jose had not yet started taking classes.

Reicks testified that at the time of trial, Denisa had been in an out-of-home placement for 62 percent of her lifetime, or 40 months total. She opined that due to the "minimal progress" shown by Jose and the amount of time Denisa had already spent in foster care, it would be in Denisa's best interests to terminate Jose's parental rights.

Denisa's foster mother testified at the termination hearing. The foster mother testified that when Denisa was first placed in the foster home in 2016, she had lice, was behind in her speech

and motor skills, and was diagnosed as obese by a pediatrician, who placed Denisa on a specialized meal plan. Denisa's medical chart reflected that she had asthma, but she had not been receiving her prescribed medication prior to arriving at the foster home. When asked about Denisa's medication, Jose told the caseworker that he was unaware Denisa had asthma. The foster mother testified that Denisa was initially very afraid of men and that she would cry if a man got too close to her.

The foster mother testified that although Denisa's behaviors improved after placement, she began to regress when Jose began visitation with Denisa in September 2017. She testified that Denisa began to be very emotional and would cry frequently, sometimes over 20 times in a single day. Denisa would get upset if her siblings touched her. At daycare, Denisa was aggressive and hurt the other children. The foster mother testified that during visitation, Jose did not comply with the pediatrician's meal plan for Denisa, and he frequently cancelled visitation due to his work schedule.

The foster mother testified that separating Denisa from her siblings would cause irreparable harm. She based this opinion on the fact that Denisa had been living in the foster home for three years, had never been separated from her siblings before, and because Denisa had told the foster parents she did not want to live with Jose.

Denisa's therapist, Dru McMillan, testified. McMillan began treating Denisa and her siblings in February 2017. McMillan testified that when she first met Denisa, she observed her to be aggressive and emotionally dysregulated. She testified that after being returned to the foster home following the initiation of this case in 2019, Denisa was confused and struggling with separation anxiety. Denisa told McMillan that she did not want to be separated from her siblings.

McMillan testified that Denisa's older siblings had disclosed that Jose was abusive to them and to their mother. Denisa's siblings recounted an incident when Jose hit their mother with a beer bottle and another time when he hit her with a piece of wood. They told McMillan that Jose made them take cold showers as punishment and that he would force the children to fight each other until blood was drawn. Jose hit one of Denisa's older sisters with a frying pan, which left a scar on her head. A different sister woke in the night to find Jose choking her, and she told McMillan that Jose forced her to watch pornography.

McMillan testified that while living with Jose, all of the children would be left alone for long periods of time and would go to the neighbors to ask for food. She testified that sometimes the children would have to wear wet clothes to school because all of their other clothes were dirty.

McMillan diagnosed Denisa and her siblings with chronic posttraumatic stress disorder. She testified that it was in Denisa's best interests to remain with her siblings in the foster parents' home. She opined that because Denisa had been removed from her biological parents' care at a young age and had lived almost continuously with the foster parents for several years, the best option for Denisa would be to remain in a home that had consistently provided care and would avoid further disruption of relationships. McMillan testified that Jose's lack of consistency throughout both the Douglas County and Lincoln County cases was concerning to her. She further testified that because Jose had previously abused Denisa's older siblings and Denisa's mother, she had concerns for Denisa's safety if she were to be reunited with Jose.

The guardian ad litem stated that she believed it would be in Denisa's best interests for Jose's parental rights to be terminated. She based this opinion on the testimony presented at the termination hearing, the recommendations of Denisa's therapist, the reports about Jose's conduct by Denisa's siblings, and Jose's lack of consistency.

After the hearing, the juvenile court entered a written order. The court found that the State proved by clear and convincing evidence that Denisa had been out of the home for 15 of the most recent 22 months, that Jose was an unfit parent, and that it was in Denisa's best interests for Jose's parental rights to be terminated. This appeal followed.

ASSIGNMENTS OF ERROR

Jose assigns that the juvenile court erred in finding that (1) he is an unfit parent and (2) termination of his parental rights was in Denisa's best interests.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016). But when evidence is in conflict, an appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than another. *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015). When the parties contest the validity of the evidence presented to the trial court, the reviewing court should give deference to the trial court's determination of the credibility of witnesses. *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006).

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *Id.*

ANALYSIS

For the State to terminate a parent's rights under § 43-292, the court must find clear and convincing evidence that (1) statutory grounds exist for termination and (2) that the termination is in the child's best interests. *Kenneth C. v. Lacie H.*, 286 Neb. 799, 839 N.W.2d 305 (2013). Clear and convincing evidence is that which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved. *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). Statutory grounds focus on the parent's past conduct, but the best interest element focuses on the future well-being of the child. *Kenneth C. v. Lacie H., supra*. A parent's perfection is not necessary, but the court must look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *In re Interest of Crystal C.*, 12 Neb. App. 458, 676 N.W.2d 378 (2004).

*Statutory Grounds.*

On appeal, Jose does not contest that statutory grounds for termination existed in this case, and in reviewing the record, we agree with the juvenile court that the State proved by clear and convincing evidence that Denisa had been in an out-of-home placement for 15 of the most recent

22 months. The evidence showed that Denisa had been placed in a foster home in November 2016 and had remained there since that date except for a few weeks in 2019. In total, Denisa had been placed out of the home for 40 months, or 62 percent of her lifetime. We therefore conclude that statutory grounds for termination existed in this case under § 43-292(7).

*Best Interests and Parental Fitness.*

Jose argues that the juvenile court erred in finding by clear and convincing evidence that he was an unfit parent and that termination of his parental rights was in Denisa's best interests.

In addition to proving a statutory ground, the State must show that termination is in the best interests of the child. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must also show that the parent is unfit. *Id.* There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. *Id.* Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.* The term "unfitness" is not expressly used in § 43-292, but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the child's best interests. *In re Interest of Jahon S., supra.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016). The best interests analysis and the parental fitness analysis are separate inquiries, but each examines essentially the same underlying facts as the other. *Id.*

Here, testimony at the termination hearing showed that Jose physically abused both Denisa's mother and her older siblings. The evidence showed that Jose choked one of Denisa's sisters and forced her to watch pornography with him. When Denisa began visitation with Jose, her behavior regressed. Denisa's caseworker, foster mother, and therapist all testified that they feared for Denisa's safety and mental health if she were to be separated from her siblings and returned to Jose's care.

Furthermore, the record shows a lack of engagement and consistency from Jose in both the Douglas County and Lincoln County cases by Jose. In the Douglas County case, Jose never progressed beyond fully supervised visitation in three years, and his attendance at visitation with Denisa was irregular. The record also shows that although Jose was ordered to take a domestic violence class in January 2017, he still had not started taking classes in October 2018--nearly 2 years after he was ordered to do so. In the Lincoln County case, Jose was uncommunicative and refused to speak with Denisa's caseworker. He did not send letters to Denisa or ask the Department to set up any other services for him.

Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Alec S., supra.* Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Zanaya W. et al.*, 291 Neb. 20, 863 N.W.2d 803

(2015). We conclude that the State showed by clear and convincing evidence that Jose was unfit and that termination of his parental rights was in Denisa's best interests.

CONCLUSION

For the reasons stated above, we affirm the juvenile court's order terminating Jose's parental rights to Denisa.

AFFIRMED.